34 A.3d 769

SELECTIVE INSURANCE COMPANY OF AMERICA, PLAINTIFF-RESPONDENT, v. ARTHUR C. ROTHMAN, M.D., PH.D., P.A., A/S/O D.R., DEFENDANT-APPELLANT.

DR. ARTHUR C. ROTHMAN, A/S/O D.R., PLAINTIFF, v. SELECTIVE INSURANCE COMPANY, DEFENDANT.

ARTHUR C. ROTHMAN, M.D., PH.D., P.A., PLAINTIFF, v. SELECTIVE INSURANCE COMPANY OF AMERICA, DEFENDANT.

Argued October 12, 2011—Decided January 18, 2012—As Corrected January 19, 2012.

*William Harla* argued the cause for appellant (*DeCotiis, Fitzpatrick & Cole and Kalison, McBride, Jackson & Robertson,* attorneys; *Mr. Harla, Robert B. Hille, James A. Robertson, John W. Kaveney, Victoria A. Flynn,* and *Irene Stavrellis,* on the briefs).

*Gordon S. Graber* argued the cause for respondent (*Sullivan and Graber,* attorneys; *Mr. Graber* and *Chryzanta K. Hentisz,* on the brief).

*Arthur J. Timins* submitted a brief on behalf of amicus curiae Medical Society of New Jersey (*Shiriak & Timins,* attorneys).

PER CURIAM.

We granted certification in this appeal to address two issues. First, we consider a challenge to the Appellate Division's conclusion that a licensed Physician Assistant (PA) is not authorized to perform the electrodiagnostic test known as needle electromyography (EMG). Second, we consider whether the Appellate Division erred in refusing to direct that its judgment be given only prospective effect.

I.

Plaintiff Selective Insurance Company presented this matter to the Appellate Division through its appeals from the trial court's decisions in three related disputes. Each of the underlying disputes arose as a result of treatment that defendant, Arthur Rothman, M.D., rendered to an auto accident victim and for which defendant submitted personal injury protection (PIP) claims to plaintiff as the accident victim's subrogee.

When plaintiff declined to pay claims for EMG tests it asserted had been performed by defendant's PA, defendant pursued PIP arbitration. *See N.J.S.A.* 39:6A–5.1. After defendant prevailed in that forum, he filed a complaint in the Law Division to confirm the arbitration award. He also initiated a proceeding in the Chancery Division to secure a declaration that PAs are authorized to perform EMGs; that complaint was transferred to the Law Division. In a consolidated opinion, the trial court denied plaintiff's motion to vacate the arbitration award, entered judgment in defendant's favor confirming the arbitration award and issued the declaration defendant requested.

Following its decision to consolidate the three matters for purposes of the appeal, the Appellate Division issued its published opinion reversing the orders of the trial court. *Selective Ins. Co. v. Rothman,* 414 *N.J.Super.* 331, 338–42, 998 *A.*2d 523 (App.Div. 2010). The Appellate Division thereafter denied defendant's motion for reconsideration, declining to address defendant's request

that the panel direct that its judgment be given only prospective application.

We granted defendant's petition for certification, 205 *N.J.* 80, 12 *A.*3d 212 (2011), and we thereafter granted leave to the American Medical Association and the Medical Society of New Jersey to appear as amici curiae.

## A.

Defendant's substantive arguments directed to whether PAs are authorized to perform needle EMGs are fully set forth in the Appellate Division's opinion, *Selective Ins., supra,* 414 *N.J.Super.* at 335–40, 998 *A.*2d 523, as a result of which we need not recite them in detail. Nor need we expand upon the thorough and scholarly analysis of those issues on which Judge Yannotti, writing for the appellate panel, based the court's conclusions and judgment.

As Judge Yannotti's opinion amply explains, the plain language of the governing statute limits performance of EMGs to those who are licensed to "practice medicine and surgery in this State pursuant to chapter 9 of Title 45 of the Revised Statutes." *Id.* at 337, 998 *A.*2d 523 (quoting *N.J.S.A.* 45:9–5.2(a)). Although the statutory provisions governing licensing of PAs are found in that Title and chapter, *see* Physician Assistant Licensing Act (PALA), *N.J.S.A.* 45:9–27.10 to –27.28, PAs do not qualify for, nor do they receive, a plenary license to practice medicine, *see N.J.S.A.* 45:9–27.11 (distinguishing by definition between physician and PA); *N.J.S.A.* 45:9–27.16 (listing procedures that PAs are authorized to perform).

Moreover, the statute generally authorizing performance of EMGs refers only to healthcare professionals other than PAs. *See N.J.S.A.* 45:9–5.2(a) (referring to performance of EMGs by individuals licensed to practice medicine and surgery, audiology and chiropractic). As the Appellate Division reasoned, neither the plain wording of that statute nor its legislative history suggests

that the Legislature intended to include PAs when it did not do so explicitly.

Defendant's suggestion that a PA can perform a needle EMG based on the statutory authorization for a PA to "assist" a physician, *N.J.S.A.* 45:9–27.16(b)(1), is similarly flawed. That approach, which requires a reading of the word "assist" that would equate it with "perform in the place of," would not only be contrary to the clear word that the Legislature chose but also would expand the authority given to PAs well beyond the boundaries that the statute established.

Finally, we concur with the panel's rejection of defendant's arguments that the Board of Medical Examiners has in some fashion authorized PAs to perform needle EMGs. Although the Board is statutorily authorized to adopt regulations, *N.J.S.A.* 45:9–27.24(b), the only relevant one it has promulgated lists authorized procedures, but does not include an EMG among them, *see N.J.A.C.* 13:35–2B.4(b)(6). The Board, by approving minutes of the PA Advisory Committee that referred to performance of EMGs, did not thereby adopt regulations or act with sufficient clarity to overcome the statutory limitations on the procedures that a PA is authorized to perform.

In short, we affirm the judgment of the Appellate Division on the central question raised in this appeal substantially for the reasons expressed in Judge Yannotti's thorough and persuasive opinion.

### B.

In addition to the substantive question, defendant's petition for certification asked this Court to review the appellate panel's denial of his motion for reconsideration, through which he asked the panel to give its judgment prospective application only. The Appellate Division denied that motion in an order, which explained that the issue had not been raised during the appeal and therefore would not be addressed. Following this Court's decision to grant plaintiff's petition for certification, however, we granted defen-

dant's motion to supplement the record with his attorney's certification that the issue about limiting any adverse ruling to prospective application was raised during the oral argument on appeal.

Apart from asserting that the Appellate Division was mistaken in concluding that the issue of retroactivity had not been raised as part of the appeal, defendant urges this Court to limit the effect of any adverse determination in order to prevent a manifest injustice. More specifically, defendant argues that this decision, which is a matter of first impression, should not be applied retroactively in light of the reasonable reliance by defendant and others on the plausible interpretations taken by the PA Advisory Committee and the Board's approval of that body's minutes. Further, he contends that refusing to limit the appellate panel's judgment to prospective application will unjustly expose him to litigation by insurers seeking to recover sums previously paid for EMGs performed by PAs, to allegations that the submission of such claims for payment constitutes insurance fraud, or to action by the Board against him. He contends that these are not mere possibilities, pointing to recently filed complaints in which plaintiff and the Board seek such relief.

■ As we have long held, "our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." *Nieder v. Royal Indem. Ins. Co.*, 62 *N.J.* 229, 234, 300 *A.*2d 142 (1973) (citation omitted); *see Alloway v. Gen. Marine Indus.*, 149 *N.J.* 620, 643, 695 *A.*2d 264 (1997) (applying *Nieder* in refusing to reach argument first advanced before Supreme Court). Although we do not suggest that counsel's reference to the retroactivity question during oral argument was sufficient to require the Appellate Division to address it, in light of our grant of leave to supplement the record, we have elected to address the question in a summary manner.

Decisions arising in the context of civil litigation are ordinarily given retroactive application, *see Reuter v. Ft. Lee Borough Council,* 167 *N.J.* 38, 42, 768 *A.*2d 769 (2001), but we "depart from that general principle and turn to prospective application when 'considerations of fairness and justice, related to reasonable surprise and prejudice to those affected' counsel us to do so." *Malinowski v. Jacobs,* 189 *N.J.* 345, 352, 915 *A.*2d 513 (2007) (quoting *N.J. Election Law Enforcement Comm'n v. Citizens to Make Mayor–Council Gov't Work,* 107 *N.J.* 380, 388, 526 *A.*2d 1069 (1987)). As we have explained, limiting a judgment to "prospective application is appropriate when (1) the decision establishes a new rule of law, by either overruling past precedent or deciding an issue of first impression, and (2) when retroactive application could produce substantial inequitable results." *Velez v. City of Jersey City,* 180 *N.J.* 284, 297, 850 *A.*2d 1238 (2004).

As defendant points out, prospective application is "particularly appropriate when a court renders a first-instance or clarifying decision in a murky or uncertain area of the law," *Montells v. Haynes,* 133 *N.J.* 282, 298, 627 *A.*2d 654 (1993) (citation omitted), when the affected party "reasonably relied on a plausible, although incorrect, interpretation of the law," or "a member of the public could reasonably have relied on a different conception of the state of the law." *SASCO 1997 NI, LLC v. Zudkewich,* 166 *N.J.* 579, 594, 767 *A.*2d 469 (2001) (citation omitted).

The principles that have long guided us in considering whether a particular judgment should be limited to prospective application are therefore well-settled. The record before this Court, however, is largely devoid of evidence of the type needed to engage in any meaningful analysis of whether our judgment in this matter should be given retroactive or prospective effect. We have, for example, no basis on which to make an informed decision about whether defendant's practice of permitting his PA to perform EMGs and submitting claims to insurers for those tests was one that was widespread, which might imply that there was general reliance on the interpretation of the statute and regulations that we have

found wanting. Nor is there any evidence in the record before us about whether anyone other than this defendant found the law in this regard to be "murky" or so uncertain that a retroactive application of our judgment would be manifestly unjust.

Although there is no record that would support our interference with the Appellate Division's refusal to consider defendant's request for a limitation on the effect of the substantive ruling, defendant has advised this Court that there are pending proceedings that depend, in part, upon whether the judgment is to be applied retroactively. Because we conclude that defendant will be afforded ample opportunities in those pending matters to create an adequate record upon which the question of retroactivity may appropriately be decided, we decline to consider defendant's application that our decision be given only prospective effect.

## II.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice RABNER and Justices LONG, ALBIN, HOENS, PATTERSON, and Judge WEFING (temporarily assigned)—6.

*Not Participating*—Justice LaVECCHIA—1.